**Carl GROSE, Appellant,**

v.

**Jesse BROWN, Secretary of Veterans Affairs, Appellee.**

**No. 91–407.**

United States Court of Veterans Appeals.

Jan. 29, 1993.

Carl Grose, pro se.

Robert E. Coy, Acting Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and Ar-

thur L. Kraut, were on the pleadings, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and IVERS, Associate Judges.

IVERS, Associate Judge:

Carl Grose appeals from a November 23, 1990, Board of Veterans' Appeals (BVA or Board) decision which denied his claim for service connection for multiple sclerosis. The Court has jurisdiction of the case under 38 U.S.C. § 7252(a) (formerly § 4052(a)). For the reasons set forth below, we affirm the decision of the BVA.

FACTS

The veteran served in the United States Army for fifty-three days, from December 6, 1960, to January 27, 1961. R. at 1. Notes on his enlistment examination show that he had suffered, inter alia, from the following: Undulant fever, at age four or five years from raw milk on a ranch, no complications or sequelae; frequent indigestion; bleeding for two weeks after tonsillectomy; and occasional worry. R. at 3, 5. Undulant fever, also known as brucellosis, is

a disease caused by bacteria of the genus Brucella; a disease of man of sudden or insidious onset and long duration caused by any of four organisms found in goats, hogs, cattle, and dogs, characterized by great weakness, extreme exhaustion on slight effort, night sweats, chills, remittent fever, and generalized aches and pains, and acquired through direct contact with infected animals or animal products or from the consumption of milk, dairy products, or meat from infected animals.

WEBSTER'S MEDICAL DESK DICTIONARY 88 (1986). The veteran's service medical records reveal that in December 1960 he suffered from a "couple of episodes of diarrhea" and that he reported feeling "bad generally." R. at 6. The clinical notes from December 1960 also show that the veteran "claims he can eat only natural foods (apples, oranges, nuts & cherries)," that he "[c]annot eat meats, potatoes, eggs, butter, [or] cheese," and that he "[r]efuses

to take medication." *Id.* Another medical examination report shows that the veteran "[r]efuses to eat anything but raw fruit" and "has done so for over a year because 'the Bible says so.'" R. at 7. He was subsequently referred to the mental hygiene clinic where the examiner recommended that he be discharged from service. R. at 8. The veteran's separation examination report in January 1961 showed that Mr. Grose had been "[s]een by psychiatric clinic" where he was diagnosed as "schizoid personality with religious preoccupation." R. at 12.

The veteran filed his original claim for service connection for multiple sclerosis in October 1968, alleging that multiple sclerosis was "[fir]st diagnosed [a]bout Sept[ember] 1962." R. at 15. A Veterans' Administration (now Department of Veterans Affairs) (VA) Regional Office (RO) rating board denied his claim on November 1, 1968, noting as follows: "He alleges multiple sclerosis but there is no definite neurological diagnosis of this although l[ocal] m[edical] d[octor] statement states he has some sort of neurological disorder." R. at 24. The veteran did not appeal this decision. The record shows, however, that a few weeks after the rating decision, on November 21, 1968, the RO received additional evidence regarding the veteran's claim, specifically hospital reports dated April 1963, October 1963, and March 1966. R. at 27–30. There is nothing in the record to show that the VA responded to this evidence.

In August 1989, the veteran's representative wrote to the VA on the veteran's behalf, stating that evidence received by the VA shortly after the November 1, 1968, rating decision established the veteran's claim for service connection for multiple sclerosis. R. at 32. Furthermore, the veteran's representative stated that the VA "never acted on this [evidence]" and alleged that such inaction constituted clear and unmistakable error on the part of the VA. *Id.* On August 8, 1989, an RO rating board confirmed the previous denial of service connection for multiple sclerosis and,

referring to the evidence submitted after the November 1968 rating decision, noted,

> Medical records rec[eive]d ... [in 1968] did not receive rating board consideration. 1963 records note a central nervous system disorder with the impression that it was a cord tumor. M[ultiple] S[clerosis] was # 3 on the list of probable causes, behind folic acid–B–12 deficiency and the cord tumor. 1966 report did *not* diagnose MS. SC for MS remains denied.

R. at 33 (emphasis added).

The RO received three letters after the August 8, 1989, rating decision including one from a private physician, Dr. Nakishima, who stated in a letter dated September 11, 1989, that he had practiced medicine from 1955 to 1984 and cared for Carl Grose over several years. He also stated that "because I had not seen Carl for a few years prior my retirement [sic], all of his medical records have been destroyed." R. at 34. Dr. Nakishima also stated, "Information received showed that I had first seen Carl Gross [sic] as a patient in December 1962 with a diagnosis of Multiple Sclerosis." *Id.*

On October 4, 1989, the RO rating board issued a deferred rating decision, stating, inter alia, with regard to Dr. Nakishima's letter, "What 'information' did he receive? We need copies of this information." R. at 39. The VA subsequently received another letter from Dr. Nakishima dated October 30, 1989, which stated in its entirety as follows:

> As I have stated in my previous letter, I have retired 5 years ago from my medical practice in Lodi. Though I had seen Carl S. Gross [sic] as a patient in the past, I had not seen him for many years prior to my retirement. At the time of my retirement, I had destroyed all records of patients whom I had not seen for many years.
>
> I have checked with Dr. Corey Colla, who has taken over my practice, but as expected, he could find no records of Carl S. Gross [sic].

R. at 40.

On November 4, 1989, the RO rating board confirmed the denial of the veteran's claim, stating that the "statement of vet[eran]'s wife (dated 9–20–89), a chiropractor's statement (undated), and [two] letters from Dr. Nakashima simply are not sufficient to establish [service connection] for MS. ... [The] statements are not sufficient ... to diagnose MS *within the presumptive period.*" R. at 42 (emphasis added).

The veteran filed a Notice of Disagreement, which was received on February 16, 1990, contending that he should have been granted service connection for multiple sclerosis "which falls under the extended *presumptive period of seven years.*" R. at 43. A Statement of the Case was subsequently sent to the veteran, the veteran filed a VA Form 1–9, and an RO hearing was scheduled. R. at 47–54.

The hearing was held on June 4, 1990, during which the hearing officer explained to the veteran that, in accordance with 38 C.F.R. § 3.307, "there is a requirement that the veteran must have served [ninety] days or more during a war period or after December 31, 1946," in order to be entitled to the benefit of the presumption relating to multiple sclerosis provided by 38 U.S.C. § 1112(a)(4) (formerly § 312(a)(4)). R. at 89. The veteran explained at the hearing that he thought that the provisions of 38 U.S.C. § 1137 (formerly § 337) not only entitled veterans who served during a time of peace to the benefit of those presumptions in § 1112 that were provided for veterans who served "during a period of war" (38 U.S.C. § 1112(a)), but also that § 1137 removed the requirement of "90 days or more" because § 1137 applied §§ 1111, 1112, and 1113 to "*any* veteran who served ... after December 31, 1946." 38 U.S.C. § 1137 (emphasis added); R. at 89–90.

Despite the explanation of the hearing officer regarding the provisions of 38 C.F.R. § 3.307 and the inapplicability of the presumptive provisions of § 1112 to the veteran's case, the veteran, in a letter to the VA dated July 22, 1990, again expressed his interpretation of the reference in § 1137 to "any veteran" as applying the wartime presumptions to *all* veterans. R.

at 113–14. On November 23, 1990, the BVA denied the veteran's claim for service connection for multiple sclerosis, and the veteran perfected a timely appeal to this Court.

## ANALYSIS

### A.

The first issue presented in this case is whether the veteran is entitled to the benefit of the presumptions relating to certain diseases, including multiple sclerosis, provided in § 1112. That section provides in pertinent part as follows:

(a) For the purposes of section 1110 of this title, ... in the case of any veteran who served for ninety days or more during a period of war—

. . . .

(4) multiple sclerosis developing a 10 percent degree of disability or more within seven years from the date of separation from such service ...

. . . .

shall be considered to have been incurred in or aggravated by such service, notwithstanding there is no record of evidence of such disease during the period of service.

38 U.S.C. § 1112(a)(4). This provision of Title 38 is part of Subchapter II, Wartime Disability Compensation, under Chapter 11, Compensation for Service–Connected Disability or Death. Under Subchapter IV, Peacetime Disability Compensation, under the same chapter, section 1137 of Title 38 provides in pertinent part as follows:

For the purposes of this subchapter ... the provisions of sections 1111, 1112, and 1113 of this chapter shall be applicable in the case of *any* veteran who served in the active military, naval, or air service after December 31, 1946.

38 U.S.C. § 1137 (emphasis added).

The purpose of section 1137, which was added to Title 38 in 1966 by the Veterans' Readjustment Act, was "to apply the so-called 'wartime presumptions' to veterans having service after January 31, 1955, with respect to determination of service-connection of the disability." H.R.Rep. No. 1258,

89th Cong., 2d Sess. (1966), *reprinted in* 1966 U.S.Code Cong. & Admin.News 1888, 1902. The section was amended in 1974 by Public Law 93–295 which substituted "December 31, 1946" for "January 31, 1955."

The veteran's testimony at the RO hearing and his letters to the VA show that he interpreted § 1137 as applying the wartime presumptions to *all* veterans, including those who served only in peacetime *and* including those who served for less than ninety days. However, although § 1137 was added to the law so that the presumptions provided by § 1112 could be applied not only to veterans who served "during a period of war" but also to veterans who served during peacetime, nothing in the legislative history suggests that Congress intended to remove the requirement in § 1112 that, in order for the presumptions to apply, the veteran must have "served for ninety days or more." 38 U.S.C. § 1112.

■ The regulation referred to by the hearing officer at the June 1990 RO hearing was promulgated by the Secretary of Veterans Affairs pursuant to the statutory authority of 38 U.S.C. § 1112 and renders a more articulate statement of the statutory requirements of §§ 1112 and 1137 with regard to the application of the presumptions relating to certain diseases and disabilities. That regulation refers to "[p]resumptive service connection for chronic, tropical or prisoner-of-war-related disease; wartime and service on or after January 1, 1947," and provides in pertinent part as follows:

(1) *Service.* The veteran must have served 90 days or more during a war period *or* after December 31, 1946. The requirement of 90 days' service means active, continuous service within or extending into or beyond a war period, or which began before and extended beyond December 31, 1946, or began after that date.

38 C.F.R. § 3.307(a)(1) (emphasis added in first sentence). The regulation further provides that the only exception to the 90-day requirement is for prisoners of war who contract certain diseases specified under 38 C.F.R. § 3.309(c).

Because the veteran did not serve for a period of ninety days or more, he is not entitled to the seven-year presumptive period for multiple sclerosis provided by § 1112. Although the BVA could have explained in more detail in its decision why the seven-year presumption did not apply in the veteran's case, the Court holds that the conclusion of the Board that the veteran was "not entitled to the seven-year presumptive period" was correct. *Carl Grose*, BVA 90–40141, at 4 (Nov. 23, 1990).

### B.

■ Although the veteran is not entitled to the benefit of the seven-year presumptive period for service connection for multiple sclerosis provided by § 1112, he is not precluded from showing that he is entitled to direct service connection under § 1110. However, there is nothing in the record before the Court to show that the veteran acquired multiple sclerosis during his fifty-three days of service. The veteran himself wrote in 1968 that multiple sclerosis was "[fir]st diagnosed about Sept[ember] 1962", about twenty months after separation from service. R. at 15. Although medical evidence of record does show that multiple sclerosis was considered among other ailments as a possible diagnosis as early as 1963, even a firm diagnosis of the disorder two years after service would not be sufficient evidence, in itself, to establish that the disease was acquired during the veteran's fifty-three days of service. Moreover, the Court observes that there is no medical evidence of record relating the veteran's current disorder to any disorders or symptoms of disorders that manifested themselves in service. Therefore, we hold that there was a plausible basis in the record for the findings of fact upon which the BVA based its denial of direct service connection for multiple sclerosis in this case and that those findings were not clearly erroneous. 38 U.S.C. § 7261(a)(4) (formerly 4061(a)(4)); *see Mingo v. Derwinski*, 2 Vet.App. 51, 53 (1992); *Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.")

### CONCLUSION

For the reasons stated above, the November 23, 1990, decision of the BVA is AFFIRMED.